UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE FARMER,<br><br>    Plaintiff,<br><br>v.<br><br>OPTIO SOLUTIONS, LLC,<br><br>    Defendant. | Case No. 22-cv-00907-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 19 |

## I.  INTRODUCTION

Before the Court is the Rule 12(b)(6) motion by Defendant Optio Solutions, LLC, doing business as Qualia Collection Services ("Defendant") to dismiss Plaintiff Jamie Farmer's ("Plaintiff") First Amended Complaint ("FAC") in this class action related to an allegedly misleading debt collection letter.  Plaintiff brings various claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), the California Rosenthal Fair Debt Collection Practices Act § 1788, *et seq.*, and the California Business and Professions Code § 17200, *et seq.*

## II.  BACKGROUND

Defendant collects defaulted consumer debts owed to other creditors.  (Docket No. 18 (FAC) at ¶ 21.)  It sent Plaintiff—a Wisconsin resident—a letter collecting her allegedly defaulted Kohl's credit card debt incurred for personal, family, and household purposes.  (*Id.* at ¶¶ 23–26; Docket No. 18-1 (FAC Ex. A).)  The relevant portion of the letter states:

> Your account has been assigned to our agency for collection.  The Creditor to whom the debit is owed is Capital One N.A.
>
> *We are willing to settle your account for 50% of the balance due.*
> Once your payment in the amount of $498.45 is received and clears,

>your account will be closed and collection efforts will cease.  *This offer will expire 45 days from the date of this letter.  We are not obligated to renew this offer.*  Our request for payment does not affect your rights as set forth below. . . .

(FAC at ¶ 30; FAC Ex. A) (emphasis added).

    The FAC challenges these statements on two grounds: (1) The sentence "*We* are willing to settle your account for 50% of the balance due" falsely implies that Defendant has the authority to decide the condition of the debt settlement when only the creditor does (the "Authority Theory"). (FAC ¶¶ 31–32.)  (2) Defendant's statement that it is not obligated to renew the offer is false, deceptive, and misleading because it must extend the offer deadline beyond 45 days (the "Renewal Theory"). (*Id.* at ¶ 35.)  According to the FAC, the debt's creditor contractually requires Defendant to settle the debt for 50% of the balance due during the entire time when Defendant collects on an account.  (*Id.* at ¶¶ 28–35.)  In other words, Defendant must always renew the offer, contrary to the letter's statement that it is "not obligated" to do so.  The letter, Plaintiff alleges, "unfairly influences [her] and least [sophisticated] consumer's decision to accept the creditor's offer" and "deprived [her] of truthful, non-misleading, information."  (*Id.* at ¶¶ 37, 39.)

    Plaintiff filed her initial complaint on February 14, 2022.  Besides the Renewal Theory, the initial complaint alleged that the itemized "Balance Due" in the letter gave an allegedly false impression that the debt was increasing (the "Balance Due Theory").  (*Id.* at ¶¶ 36–46.)  Defendant moved to dismiss, and Plaintiff amended her complaint in response.  (Docket Nos. 8, 18.)  In the FAC, Plaintiff dropped the Balance Due Theory and added the Authority Theory described above. Defendant again moved to dismiss for failing to state a claim under Rule 12(b)(6).  (Docket No. 19.)  In the briefings, the parties only focused on the Renewal Theory.

    At the hearing for the motion to dismiss, the Court raised questions about Plaintiff's Article III standing sua sponte—in particular, whether Plaintiff sufficiently alleged injury. "Plaintiff stated that she has suffered only intangible harm (stress) because of Defendant's alleged conduct," and she "took no action in reliance upon the alleged false statement and was not in a position to pay off the loan even as offered."  (Docket No. 33 (Minute Order).)  The Court ordered the parties to file concurrent supplemental briefing on standing, and they have done so.

2

### III.   LEGAL STANDARD

A court may not decide the merits of the case without subject matter jurisdiction which requires the plaintiff have Article III standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). The Court has "an independent obligation to examine jurisdictional issues such as standing sua sponte." *Wilson v. Lynch*, 835 F.3d 1083, 1090 n.2 (9th Cir. 2016) (quotation and alteration omitted).

Article III requires plaintiff to show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Plaintiff's injury in fact must be "concrete"—that is, "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("*Spokeo I*"). The party invoking the federal judicial power "has the burden of establishing the facts necessary to support standing." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022).

Whether an injury in fact is "concrete" depends on the kind of harm alleged. Under *Spokeo I*, "traditional tangible harms, such as physical harms and monetary harms" will "readily qualify as concrete injuries under Article III." *TransUnion*, 141 S. Ct. at 2204. "Various intangible harms can also be concrete." *Id.* To decide whether intangible injuries are sufficiently "concrete," a court must consider "both history and the judgement of Congress." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) ("*Spokeo II*").

To determine whether a plaintiff has suffered a concrete intangible injury due to a defendant's failure to comply with a statutory requirement, the Ninth Circuit outlined a two-step test: "(1) whether the statutory provisions at issue were established to protect [a plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Tailford*, 26 F.4th at 1099 (alteration in original) (quoting *Spokeo II*, 867 F.3d at 1113).

///

///

## IV. ANALYSIS

The parties agree that the Ninth Circuit's two-step framework applies here. (Docket No. 34 ("Def. Suppl. Br.") at 3–4 (citing two-step framework); Docket No. 35 ("Pltf. Suppl. Br.") at 4 (same).) They also agree that the Court should consider what has been called the "close relationship" inquiry. (*See* Pltf. Suppl. Br. at 3 ("It is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.") (quotation and alteration omitted); Def. Suppl. Br. at 4 ("[I]ntangible harms are traditionally only deemed concrete if the plaintiff's alleged injury bears a 'close relationship' to the sort of harms traditionally recognized by American Courts.") (quotation omitted).) Accordingly, the Court, in applying the Ninth Circuit's framework, must determine whether there is a historical or common-law analog to Plaintiff's alleged injury traditionally recognized by American courts.

A. Plaintiff's FDCPA Claims and Alleged Harm

Plaintiff alleges that Defendant's false statements violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f. Section 1692e recites,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. And section 1692f recites,

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

15 U.S.C. § 1692f. All of Plaintiff's FDCPA claims are predicated on the Defendant's statements-at-issue as described in the background section.

Plaintiff asserts two types of harm. First, although not alleged in the FAC, Plaintiff's counsel represented at the hearing that Plaintiff has suffered stress. (Docket No. 33.) Second, the

1  FAC alleges that Defendant's letter "deprived Plaintiff of truthful, non-misleading, information in
2  connection with [Defendant's] attempt to collect a debt" (FAC at ¶ 39)—in other words,
3  informational injury.

4  In her supplemental brief, Plaintiff predicates her standing only based on the first type of
5  harm. (*See* Pltf. Suppl. Br. at 6–7 ("Plaintiff urges this Court to hold that the emotional distress,
6  stress, and anxiety she suffered as the result of [Defendant's] false letter confers Article III
7  standing[.]").) Notably, the Ninth Circuit has signaled that "the doctrine of informational injury
8  does not apply" to FDCPA Section 1692e violations. *Adams v. Skagit Bonded Collectors, LLC*,
9  836 F. App'x 544, 546 n.2 (9th Cir. 2020). Therefore, the Court only addresses Plaintiff's alleged
10 harm of emotional stress.

11 Defendant observes that the Seventh Circuit "ha[s] expressly rejected 'stress' as
12 constituting concrete injury following an FDCPA violation." *Wadsworth v. Kross, Lieberman &*
13 *Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (quoting *Pennell v. Global Tr. Mgmt.*, 990 F.3d
14 1041, 1045 (7th Cir. 2021)). But "[t]he Ninth Circuit has not yet considered whether . . .
15 allegations of intangible harm—emotional distress, loss of personal reputation, and loss of
16 personal time—without more, suffice as concrete injury-in-fact for standing purposes in a FDCPA
17 case in view of *TransUnion*." *Samano v. LVNV Funding, LLC*, No. 1:21-cv-01692-SKO, 2022
18 U.S. Dist. LEXIS 72102, at *6 (E.D. Cal. Apr. 18, 2022).

19 B.  <u>An FDCPA Violation, Standing Alone, Does Not Confer Standing</u>

20 At the outset, Plaintiff contends that "a[n] FDCPA violation standing alone[] creates a
21 sufficient concrete injury." (Pltf. Suppl. Br. at 5.) But "'a bare procedural violation, divorced
22 from any concrete harm,' cannot 'satisfy the injury-in-fact requirement of Article III.'" *Bassett v.*
23 *ABM Parking Servs.*, 883 F.3d 776, 779 (9th Cir. 2018) (quoting *Spokeo I*, 578 U.S. at 341). The
24 Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-
25 fact requirement whenever a statute grants a person a statutory right and purports to authorize that
26 person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo I*, 578 U.S.
27 at 341). The Court distinguished "a plaintiff's statutory cause of action to sue a defendant over the
28 defendant's violation of federal law" and "a plaintiff's suffering concrete harm because of the

5

defendants' violation of federal law." *Id.* "An injury in law is not an injury in fact." *Id.* "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* A statutory violation of the FDCPA does not create a per se injury sufficient to confer standing. *See Adams*, 836 F. App'x at 545 n.1 ("Some of our prior cases have held that a plaintiff alleges a cognizable injury in fact merely by alleging a violation of the FDCPA. . . . The analysis in those cases is 'clearly irreconcilable' with *Spokeo I* and has been abrogated.") (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). More is needed.

### C. Step One: the FDCPA Was Not Established to Protect Plaintiff's Concrete Interests

Since a violation of the FDCPA alone does not confer standing, the Court proceeds to analyze the concreteness of Plaintiff's alleged harm under the Ninth Circuit's framework. At step one, courts examine "whether the statutory provisions at issue were established to protect the plaintiff's concrete interests (as opposed to purely procedural rights)," considering "both history and the judgement of Congress." *Spokeo II*, 867 F.3d at 1113. The Court turns first to historical practice to find a traditional analog, if any.

#### 1. Historical Practice

If the harm protected by the FDCPA bears a "close relationship" to harms that have been "traditionally regarded as providing a basis for a lawsuit," Plaintiff has sufficiently alleged a concrete injury. *Campbell*, 951 F.3d at 1117–18 (finding concrete harm where there was analog between traditional privacy torts and statutory protections at issue); *accord TransUnion*, 141 S. Ct. at 2209 (finding concrete injury where dissemination of inaccurate information to third parties under FCRA was similar to tort for defamation).

##### a. Intentional Inflict of Emotional Distress

Plaintiff argues that emotional distress is a traditionally actionable harm founded on personal torts, but does not identify what those torts are. (Pltf. Suppl. Br. at 6.) The tort analogs identified in Plaintiff's cited cases do not apply here. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 942–43 (11th Cir. 2021) (recognizing emotional distress from inaccurate credit reporting as concrete harm where alleged FCRA violation bore close relationship to common-law tort of

6

1   defamation); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) (finding

2   alleged harm from being subjected to attempts to collect debts not owed similar to that suffered by

3   victims of common-law torts of malicious prosecution, wrongful use of civil proceedings, and

4   abuse of process). The alleged harm here is not analogous to defamation or malicious prosecution.

5         The closest personal tort analog imposing liability for emotional distress is intentional

6   inflict of emotional distress (IIED). This is because, except for certain harmful or offensive

7   contact and IIED, "conduct which is tortious because intended to result in bodily harm to another

8   or in the invasion of any other of his legally protected interests does not make the actor liable for

9   an emotional distress which is the only legal consequence of his conduct." *Restatement (Second)*

10  *of Torts* § 47. Mere emotional distress, without more, is similarly insufficient to create liability for

11  negligent conduct. *See id.* at § 436A ("If the actor's conduct is negligent as creating an

12  unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results

13  in such emotional disturbance alone, without bodily harm or other compensable damage, the actor

14  is not liable for such emotional disturbance."); *id.* at §§ 312, 313 (Negligent infliction of

15  emotional distress requires showing of "an illness or other bodily harm.").

16        Although IIED is the closest tort analog based on the alleged harm, Plaintiff's claim does

17  not bear a "close relationship" to it. IIED imposes liability on "[o]ne who by extreme and

18  outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Id.* at

19  § 46. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond

20  all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

21  civilized community." *Id.* at § 46 *cmt. d.* "The liability clearly does not extend to mere insults,

22  indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Defendant's

23  statement that it is "not obligated to renew this offer"—even if false—does not arise to that level.

24  *Cf. In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 65 (E.D.N.Y. 2021) (rejecting IIED

25  as analog to debt collector's alleged FDCPA violation of employing outside firm to print and mail

26  debt collection letters); *but cf. Thome v. Sayer Law Grp., P.C.*, 567 F. Supp. 3d 1057, 1077 (N.D.

27  Iowa 2021) (noting that *TransUnion* "discusses confusion and distress as possible injuries without

28  mentioning that they would not be concrete without defendant's act being extreme and

1  outrageous").

2          b.    Fraud

3  Defendant's proposed common-law analog—fraud—resembles Plaintiff's claims more and finds support in this Circuit's case law. *See Adams*, 836 F. App'x at 546 (finding fraud to be closest common-law analog to failing to clearly identify current creditor in debt collection letters in violation of FDCPA); *Lenzini v. DCM Services, LLC*, No. 4:20-cv-07612-YGR, 2021 WL 2139433, at *3–*4 (N.D. Cal. May 26, 2021) (following *Adams* for alleged FDCPA violation of failing to clearly identify current creditor); *Uvaldo v. Germaine Law Off. PLC*, No. CV-20-00680-PHX-JJT, 2022 U.S. Dist. LEXIS 11603, at *8 (D. Ariz. Jan. 21, 2021) (finding fraud to be closest common-law analog to plaintiff's FDCPA claim alleging misrepresentation); *see also Murphy v. Automated Accounts, Inc.*, No. 2:20-cv-00030-SMJ, 2021 U.S. Dist. LEXIS 101742, at *6 (E.D. Wash. May 28, 2021) ("The FDCPA protects consumers from fraud and deceit, which resembles causes of action under common law.").

But Plaintiff cannot analogize her claim with fraud. At common law, actions for fraud "required proof of reliance and resulting pecuniary loss." *Adams*, 836 F. App'x at 546 (citing *Restatement (Second) of Torts* §§ 525, 537, 550-552). In *Adams*, the Ninth Circuit panel found "a bare allegation of confusion" with no actions taken or forgone in reliance of the statements at issue to be an insufficiently concrete injury. *Id.* at 457. Likewise, in *Lenzini*, the plaintiff sued defendant debt collector for identifying the debt's creditor merely as "creditor" rather than "current creditor" in violation of Section 1692g of the FDCPA. 2021 WL 2139433, at *1–*2. The plaintiff claimed to have failed to make a payment on the subject debt because the omission of the identity of the current creditor rendered it impossible for her to determine to whom she should make payments. *Id.* *4. The court nonetheless found those allegations "deficient in explaining [her] reliance or demonstrating any risk of actual confusion resulting from the letter." *Id.*

Here, Plaintiff does not claim that "[s]he took or forewent any action because of the allegedly misleading statements." *Adams*, 836 F. App'x at 547; *see also West v. Summit Collection Servs.*, No. 3:20-cv-00556-LRH-CSD, 2022 U.S. Dist. LEXIS 132341, at *11 (D. Nev. Jul. 26, 2022) (at summary judgment, finding no detrimental reliance to support Article III

8

standing for FDCPA Section 1692e claim where plaintiffs were never going to pay the debt regardless of whether debt collector's requests confused them); *Bahar Sengel & Cengiz Sengel v. Concord Servicing Corp.*, No. 5:21-CV-01454-CJC(SHKx), 2022 U.S. Dist. LEXIS 79544, at *8 (C.D. Cal. Jan. 26, 2022) (declining to find Article III standing based on allegations of "emotional distress" and "feeling harassed" where plaintiffs failed to explain how they detrimentally relied on the debt collection letter at issue). Plaintiff concedes she was not in a position to pay off the loan. Thus, she does not, and cannot, allege either reliance or resulting pecuniary loss. Accordingly, Plaintiff has not shown a "close relationship" between the alleged emotional harm and the harms that traditionally provided a basis for lawsuit.

2. Congressional Judgment

The Court turns to "judgment of Congress" to determine whether the FDCPA provisions at issue were nonetheless established to protect Plaintiff's alleged interests. *Spokeo II*, 867 F.3d at 1113.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (quoting S. Rep. N. 95-382, at 1 (1977)) ("Legislative history indicates that Congress enacted the FDCPA to protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'"). "[C]ongressional judgment suggests a concern with 'genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response' to a debt collector's communication." *Adams*, 836 F. App'x at 546 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)). After all, debt collectors who use statements that are not genuinely misleading would not be competitively advantaged compared to those who refrain from doing so. "Statements that induce no reliance," as is true in this case, "do not impede a consumer's ability to intelligently respond to a debt collector." *Id.* The FDCPA provisions at issue were therefore not established to protect Plaintiff's emotional

1   stress where there is no consumer reliance.[1]

2   In sum, neither historical practice nor Congressional judgment establishes that Congress
3   established the FDCPA to protect Plaintiff's interests in being free from emotional distress
4   resulted from Defendant's alleged misrepresentation of the sort asserted here where there was no
5   consumer reliance. The alleged violation is therefore "more procedural than substantive." *Id.* at
6   546.

D.  Step Two: the Alleged Procedural Violations Did Not Cause the Harm the FDCPA Is Designed to Vindicate

At step two, courts consider "whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to" interests protected by the relevant provisions of the FDCPA. *Spokeo II*, 867 F.3d at 1113.

Plaintiff has not alleged actual harm or a material risk of harm to the interests protected by the FDCPA. As discussed above, the FDCPA is designed to protect a consumer's ability to intelligently choose his or her responses. The purported misrepresentation here did not harm that protected interests because Plaintiff did not and could not have changed her response even if the misrepresentation were corrected. She therefore lacks Article III standing.

## V.  CONCLUSION

Plaintiff did not suffer a sufficiently concrete injury to have Article III standing for her FDCPA claims. Since Plaintiff brought state law claims which are not disposed of by the ruling herein, the Court refuses to exercise supplemental jurisdiction and dismisses the entire complaint for lack of subject matter jurisdiction without prejudice. *See Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.") (citation omitted).

---

[1] Plaintiff's Section 1692f claim has the same basis as her Section 1692e claims (Docket No. 30 at 13), and she does not argue that the former warrants a separate standing analysis. *Cf. Donohue*, 592 F.3d at 1033 ("[W]hether conduct violates §§ 1692e or 1692f requires an objective analysis that considers whether the least sophisticated debtor would likely be misled by a communication.").

This order disposes of Docket No. 19.  The Clerk of Court is instructed to enter Judgment and close the case.

**IT IS SO ORDERED**.

Dated: August 31, 2022

_____
EDWARD M. CHEN
United States District Judge